JEREMY FUEL & GRAIN CO. v. DENVER & R. G. R. CO.

No. 3672.   Decided May 3, 1922.   Rehearing denied May 25, 1922.
(207 Pac. 155.)

1. PLEADING—COMPLAINT ALLEGING RATE CHARGED AND THAT IT IS UNREASONABLE OR EXTORTIONATE STATES ULTIMATE FACT. In an action against a carrier for excessive freight charges, a statement in the complaint that an overcharge has been collected is one of ultimate fact, and not simply a legal conclusion, and a complaint alleging the rate charged, and that it is unreasonable or extortionate, is not subject to demurrer.[1]

5. APPEAL AND ERROR—ERROR IN ADMISSION OF EVIDENCE NOT AFFECTING PARTIES' SUBSTANTIAL RIGHTS DOES NOT REQUIRE REVERSAL. The introduction of incompetent and immaterial evidence will not warrant a reversal where there was substantial and competent evidence supporting the complaint, and an examination of the record convinces the Supreme Court that the jury's verdict for plaintiff was right; for the letter and spirit of Comp. Laws Utah 1917, § 6622, requires courts to disregard any error or defect in pleadings or proceedings not affecting the parties' substantial rights.[2]

Appeal from District Court, Third District, Salt Lake County; *John F. Tobin*, Judge.

[1] *Herndon* v. *Salt Lake City*, 34 Utah, 65, 95 Pac. 646, 131 Am. St. Rep. 827; *Francis* v. *Gisborn*, 30 Utah, 67, 83 Pac. 571; *Chesney* v. *Chesney*, 33 Utah, 503, 94 Pac. 989; *Rasmussen* v. *Sevier, etc.*, 40 Utah, 371, 121 Pac. 741.

[2] *Baird* v. *D. & R. G.*, 49 Utah, 58, 162 Pac. 79.

2. RAILROADS—PERIOD OF FEDERAL CONTROL EXCLUDED FROM PERIOD OF LIMITATION OF STATE STATUTE. Since the Transportation Act provides that the period of federal control shall not be computed as a part of the period of limitation in actions against carriers for causes of action arising prior to federal control, the period from the date the government took control of and operated a railroad must be excluded from the computation of the period of limitation of the state statute.

3. CARRIERS—SHIPPER AT COMMON LAW COULD RECOVER FOR DISCRIMINATION IN RATES. A shipper at common law could recover for discrimination in rates; the carrier being bound to carry at an equal rate for all customers for substantially similar service and under substantially similar conditions.

4. CARRIERS—LIMITATION OF ACTIONS—COMMON-LAW REMEDY TO RECOVER OVERCHARGES NOT ABROGATED BY STATUTE; SHIPPER'S SUIT TO RECOVER OVERCHARGES NOT GOVERNED BY LIMITATIONS AS TO STATUTORY LIABILITIES OR PENALTIES. A shipper's right at common law to sue the carrier to recover excessive and discriminatory freight charges collected from the shipper by the carrier is not abrogated by Comp. Laws 1907, §§ 434, 454, 455, requiring reasonable rates, and authorizing an overcharged shipper to recover double the charges paid; hence a suit to recover excessive freight charges collected is not governed by Comp. Laws 1917, § 6468, subd. 1, as to action for liability created by statute, or by section 6470, subd. 1, as to action for statutory penalty, but by the four-year statute.

Action by the Jeremy Fuel & Grain Company against the Denver & Rio Grande Railroad Company. Verdict and judgment for plaintiff, and defendant appeals.

AFFIRMED.

See, also 59 Utah, 266, 203 Pac. 863.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, and *J. G. McMurry,* of Denver, Colo., for appellant.

*Baldwin Robertson* and *Ball, Musser & Robertson,* all of Salt Lake City, for respondent.

WEBER, J.

In March, 1919, plaintiff, on its own behalf, and as as-
signee of 14 other coal shippers, brought suit to recover ex-
cessive freight collected by defendant on coal shipped from
different railroad stations in Carbon county, Utah, to Salt
Lake City, Utah, by plaintiff and its assignors.   The jury
returned a verdict in favor of plaintiff in the sum of
$58,962.80, including interest.   Defendant appeals.

Appellant assigns many errors.   The most important re-
late to the pleadings.

The complaint in substance charges that, between Novem-
ber 20, 1914, and March 7, 1917, the defendant collected
freight on coal shipped in carload lots by plaintiff and its
assignors at the rate of $1.60 per ton, and that between those
dates, as contained in its printed tariff schedule for the
transportation of coal, the legal rate was $1.25 per ton; that
the charges of $1.60 per ton demanded and collected by ap-
pellant of respondent and its assignors were unjust, unrea-
sonable, discriminatory, and unlawful to the extent that said
charges exceeded the rates and charges as published in the
tariff schedule, and the charges demanded and collected from
respondent and its assignors were unjust, unreasonable, dis-
criminatory and unlawful to the extent that they exceeded
$1.25 per ton.

The complaint was demurred to by appellant on the
ground of uncertainty, in that from the averments that the
rates exacted of the consignees ''were unjust, unreasonable,
discriminatory and unlawful to the extent that said charges
exceeded the sum of $1.25 per ton it is impossible to deter-
mine in what respect said rates are unjust, unreasonable,
discriminatory or unlawful.''   A motion was also made to
strike the parts of the complaint demurred to.   It is argued
that to say a rate is unreasonable is merely a conclusion, and
not a statement of fact, and that appellant was entitled to
be apprised in what respect the rates were claimed to be
unreasonable.   Attached thereto and made a part of the com-
plaint are exhibits showing, among other things, the rates

of freight charged, what the rate should have been, and the overcharge on each shipment. To say that an overcharge has been collected is stating an ultimate fact, not simply a legal conclusion. Certainly the appellant was given all the information that was necessary to fully apprise it of what respondent claimed. It has frequently been held that it is sufficient to allege in the complaint that plaintiff was charged a sum in excess of a reasonable rate. Thus it is said in *Goodridge* v. *U. P. R. R.* (C. C.) 35 Fed. 35, that—

"A simple allegation that the plaintiffs were charged a dollar a ton and that they had paid that amount, and that those charges were unreasonable and extortionate, states a good cause of action."

In 10 C. J. p. 454, § 717, the author says:

"At common law, where a carrier makes illegal charges to carry the goods, the consignee's expenses may be recovered back in an action for money had and received. As stated in *Cullen* v. *Seaboard Air Line R. R. Co.*, 63 Fla. 122, 58 South. 182, 'the gist of the action is that the defendant, upon the circumstances of the case, is obligated by the ties of natural justice to refund the money.'"

Appellant cites *Herndon* v. *Salt Lake City*, 34 Utah, 65, 95 Pac. 646, 131 Am. St. Rep. 827; *Francis* v. *Gisborn*, 30 Utah, 67, 83 Pac. 571; *Chesney* v. *Chesney*, 33 Utah, 503, 94 Pac. 989; *Rasmussen* v. *Sevier, etc.*, 40 Utah, 371, 121 Pac. 741—as supporting its proposition that the averments in respondent's complaint as to the unreasonableness of the freight charges are mere conclusions. In *Herndon* v. *Salt Lake City*, supra, it is held that an allegation in the complaint that the city is charged with a duty of maintaining its streets in a safe condition for public travel is a mere conclusion, and that, while correct as an abstract proposition of law, such a statement in an instruction was inapplicable to the facts developed in that particular case. The other three Utah cases cited are also far from being authorities in support of appellant's proposition in the instant case.

The motion to strike was properly overruled, and it was not error to overrule the demurrer to the complaint as pleading a conclusion of law instead of the facts.

Another attack made by demurrer upon the complaint is

that each cause of action, in so far as it is predicated upon the exaction of higher freight rates from the parties than from other shippers, is barred by subdivision 1, of section 6468, Comp. Laws Utah 1917, or, if not barred by that section, is barred by subdivision 1, of section 6470 of the same compilation. Subdivision 1, of section 6468, provides that an action for liability created by statute other than penalty or forfeiture under the laws of this state shall be begun within one year. Subdivision 1, § 6470, provides that an action upon the statute for a penalty or forfeiture where the action is given to an individual, except when the statute imposing it prescribes a different limitation, shall be begun within one year. This suit was instituted March 21, 1919. On December 21, 1917, the government took control of and operated the Denver & Rio Grande Railroad Company. By the Transportation Act 41 Stat. 456), providing for government control and operation of railroads it is provided that the period of federal control shall not be computed as a part of the period of limitation in actions against carriers for causes of action arising prior to federal control. Therefore the period from December 31, 1917, must be excluded from the computation of the period of limitation of the state statute. *Standley* v. *U. S. Railroad Administration* (D. C.) 271 Fed. 794. Excluding the period of federal control, none of the claims for overcharge were barred by the four-year limitation. The trial court, however, permitted no proof of shipments prior to March 31, 1915.

Counsel for appellant argue that at common law no recovery could be had for discrimination in rates, the only question being whether the rate charged was reasonable, and, if reasonable, it had to be paid even though another shipper was given a more favored rate. As supporting their proposition counsel cite 6 Cyc. 499, *Penn., etc.* v. *International, etc.*, 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; *Parsons* v. *Railroad*, 167 U. S. 447, 17 Sup. Ct. 887, 42 L. Ed. 231; 5 Am. & Eng. Ency. of Law (2d Ed.) 179; *Fitchburg Ry. Co.* v. *Gage*, 12 Gray (Mass.) 399; *Menacho* v. *Ward* (C. C.) 27

Fed. 529, 23 Blatchf. 505. The great weight of American authority is not in accord with appellant's contention. 10 C. J. 471, § 746.

"Independently of any constitutional or statutory regulation on the subject, the carrier is bound to carry at an equal rate for all customers for substantially similar service and under substantially similar conditions." 10 C. J. 489, § 775.

Referring to the doctrine that it has been held by some authorities that it is not necessary that the carrier shall serve all at the same rate of compensation, it is said in 4 R. C. L. § 35, p. 556:

"But although a number of courts have inclined toward this doctrine, there has been a marked tendency to give a more stringent interpretation to the rule, and it has been asserted that the duty of a common carrier toward the public contemplates fair treatment to all, and that therefore the carrier cannot discriminate unjustly between its patrons, and so cannot properly carry for one at an unreasonably low price, or gratis, when by so doing it would be acting unjustly toward another, even if it is ready to carry for such other at a reasonable charge. The duty which the common carrier owes to all cannot be discharged if it is allowed to make unequal preferences, and thereby prevent or impair the enjoyment of the common right, and the common-law rule should therefore be construed as meaning not only that all persons are entitled to carriage upon reasonable terms, but upon equal terms as well. It may safely be said that the tendency and weight of authority are in favor of the doctrine that a common carrier is charged with the quasi public duty of transporting on equal terms for all persons, where the carrying for some at a lower price than for others would injure those less favored. It is therefore not permissible for a common carrier to demand a different hire from different persons for an identical kind of service under identical conditions."

It is contended by appellant that, even if the common law allowed recovery for unjust discrimination, section 454, Comp. Laws Utah 1907, excluded the common law from all subjects thereby regulated. By section 434 of the statutes mentioned railroads are authorized to receive such compensation for transportation of freight "as shall be reasonable and conformable to law." By section 454 they are required to "fix and publish their rates of charges for freight and fares from one station to another on their various lines in this state." By section 455 they are prohibited from charg-

ing any one a greater sum than another "for like service, from the same place, under like conditions, under similar circumstances, and for the same period of time. For every transgression of the provisions of this section such common carrier shall be liable to the party suffering thereby double the entire amount so charged to such party." Referring to this statute counsel say:

"It will thus be seen that the statute does not prescribe the particular rates to be charged. But it does provide that the rates charged shall be no greater than are charged to another under like circumstances, etc. If, therefore, one person is charged more than another, this section is violated, and the injured party is entitled to recover double the charges paid."

It is contended that this statute gives a complete remedy to a shipper who has been overcharged, and, being in force when plaintiff's cause of action accrued, the shipper has no remedy at common law. *Winsor* v. *C. & A. R. R.* (C. C.) 52 Fed. 716, and *Beadle* v. *Railroad*, 51 Kan. 248, 32 Pac. 910, squarely support the proposition advanced by appellant. The same rule is laid down in 1 Rorer on Railroads, p. 570. There is, however, a contrariety of opinion upon this subject. In 2 Elliott on Railroads, § 711, the rule is asserted to be that—

"Unless the common-law right of action is thereby taken away in express terms or by necessary implication, the penalty imposed by a penal statute is cumulative only, and the common-law right of action continues to exist unimpaired."

In 10 C. J. p. 451, § 709, it is said:

"The common-law remedy for excessive freight charges is not abrogated by a statute authorizing recovery of the charges collected in excess of the rates properly chargeable under a railroad commission law."

See, also, 4 R. C. L. 654, § 131.

In *Heiserman* v. *B., C. R. & N. R. R.*, 63 Iowa, 732, 18 N. W. 903, it is held that:

"The liability of defendant for money collected for the transportation of property, in excess of reasonable charges, existed at common law. The enactment of a statute imposing penalties for excessive charges, recoverable by the party injured, or providing that for exacting and collecting them the agent of the railroad

company shall be guilty of a misdemeanor, does not take away the right existing at common law to recover money paid in excess of reasonable charges. * * * The injured party may waive the tort created by statute, and sue upon the implied contract raised by the law, whereby the carrier is obliged to repay the consignee or consignor of the property all sums exacted in excess of reasonable compensation."

See, also, *Fletcher Paper Co.* v. *D. & M. R. R.*, 198 Mich. 469, 164 N. W. 528; *Smith* v. *C. & N. W. Co.*, 49 Wis. 443, 5 N. W. 240; *Goodridge* v. *U. P. R. R. Co.* (C. C.) 35 Fed. 35; *La Floridienne* v. *A. C. L. R. R.*, 63 Fla. 208, 212, 58 South. 185; *Cullen* v. *S. B. A. L. R. R.*, 63 Fla. 122, 58 South. 182; *Sullivan* v. *Railroad*, 121 Minn. 488, 142 N. W. 3, 45 L. R. A. (N. S.) 612.

The statute of this state which was in force when plaintiff's cause of action accrued did not suspend other remedies and did not abrogate the common-law remedy. As plaintiff's cause of action was not based upon the statute, the court committed no error in overruling appellant's demurrer which raised the question of the statute of limitations.

Among appellant's assignments of error are many regarding the admission and exclusion of evidence. The trial was prolonged. Every possible technicality was invoked by appellant's counsel. Over objections some incompetent and some immaterial evidence was admitted. Some of the court's instructions are doubtless subject to criticism. In *Baird* v. *D. & R. G.*, 49 Utah, 58, 162 Pac. 79, it is said:

"Where a case is tried to a jury and improper or incompetent evidence is admitted to establish a material fact, respecting which the evidence is in conflict, the admission of such evidence ordinarily constitutes reversible error. There are, however, conditions under which the admission of improper evidence, even where a case is tried to a jury, may not constitute prejudicial error. Such may be the case where there is abundant competent evidence to establish the fact which is also sought to be proved by improper evidence, and where there is no evidence to the contrary."

So here the defense introduced no evidence. Substantial competent evidence supporting the complaint was adduced by plaintiff. An examination of the record convinces us that the jury's verdict was right. In such a case

it is our duty to be governed by the letter and spirit
of the statute which provides that the court must in every
stage of an action disregard any error or defect in the plead-
ings or proceedings which does not affect the substantial
rights of the parties, and that no judgment shall be reversed
or affected by reason of such error or defect.  Comp. Laws
Utah 1917, § 6622.

The judgment is affirmed, with costs.

CORFMAN, C. J., and GIDEON, THURMAN, and
FRICK, JJ., concur.