WILSON et al v. GUARANTEED SECURITIES CO. et al.

No. 4695.  Decided December 8, 1928.  (272 P. 946.)

158

*Frazer & Wallis*, of Salt Lake City, for appellants.

*C. R. Hollingsworth*, of Ogden, for respondents.

THURMAN, C. J.

This is an action in equity to rescind a contract for the purchase of certain shares of the capital stock of the defendant corporation. It is alleged in the complaint that on February 20, 1923, the plaintiffs loaned to one Ferrin and wife the sum of $2,000, taking therefor their promissory note payable to plaintiffs or order 3 years after date, bearing interest at the rate of 10 per cent per annum; that, to secure payment of said note, the makers thereof executed their mortgage upon certain real estate of which they were the owners; that said mortgage was duly filed for record and recorded in the office of the county recorder of Weber county, Utah. It is further alleged in the complaint that prior to November 6, 1924, the defendant Guaranteed Securities Company had an authorized capital stock of $250,000, divided into shares of $100 each, and during said period of time, on November 6 and 7, 1924, said company was engaged in offering for sale and in selling its unissued capital stock to the public generally, and to the plaintiffs; that on October 15, 1924, and between that date and November 7th of the same year, said defendant corporation, at Ogden, Utah, solicited plaintiffs to purchase 20 shares of said capital stock at the par value of $100 per share, and as a result of said solicitation plaintiffs agreed to purchase said number of shares of said stock for the total sum of $2,000 and in payment therefor to transfer by indorsement and assignment the aforesaid promissory note and mortgage; that the same was agreed to by said defendant corporation, and the transfer of said note and mortgage, in the manner above stated, was accordingly made to said defendant in full payment of 20 shares of its said capital stock; that the assignment of said mortgage was thereafter filed for record and recorded

in the office of the county recorder aforesaid; that said defendant then and there delivered to plaintiffs a certificate for 20 shares of the capital stock of said corporation. It is then alleged that said defendant Guaranteed Securities Company, between April 20, 1923, and December 1, 1924, was an investment company and engaged, among other things, in the business of selling and offering for sale investment securities issued by it and did not between said dates have permission or any license from the State Securities Commission of the state of Utah to sell, or negotiate for sale, the shares of stock represented by the certificate issued to the plaintiffs. It is further alleged that the said promissory note and mortgage are now in the custody of the defendant George H. Blood, as receiver for the defendant Guaranteed Securities Company, and that said company is insolvent and its capital stock utterly worthless and of no value; that plaintiffs at the commencement of this action indorsed said certificate of stock in blank and delivered it to the clerk of the court in which this action was commenced. Plaintiffs pray that the aforesaid agreement between them and said defendant Guaranteed Securities Company for the purchase of said stock be declared null and void; that said defendants be required to return to plaintiffs the said note and mortgage, and that the assignment of said mortgage be declared void and canceled of record; that the said certificate of shares of the capital stock of said defendant company be delivered to the defendants or be declared null and void; and that plaintiffs be awarded general relief and costs of suit.

It is alleged in the complaint that the defendant George H. Blood, on December 2, 1925, in a proceeding then pending in the district court of Salt Lake county, was appointed receiver of the defendant Guaranteed Securities Company; that he qualified as such, and has ever since been and now is the duly appointed, qualified, and acting receiver for said corporation. There is no allegation in the complaint that plaintiffs had permission from said court to institute this action against said receiver.

There are other allegations in the complaint as to false and fraudulent representations made by defendant to induce plaintiffs to purchase said stock, but, in view of the finding made by the trial court, such allegations are immaterial on this appeal.

Thereafter, on January 19, 1927, the defendant George H. Blood filed a petition with the court representing that he was the duly appointed, qualified, and acting receiver for the Guaranteed Securities Company, in a certain case therein mentioned, which was pending in the district court of Salt Lake county, and that the interests of the petitioner were identical with that of the defendant Guaranteed Securities Company, and that it would be for the best interests of the receivership estate in his hands as receiver if he, as such receiver, be substituted as the sole defendant in such action. On the same date said defendant, as receiver aforesaid, filed a general demurrer to plaintiffs' complaint.

On motion of said defendant, as receiver, application was made for a change of venue from Weber county, where the action was commenced, to Salt Lake county, which county was the place of residence of the defendant company and the county in which he, as receiver, had his office and administered the estate of such receivership, and it was ordered that the cause be transferred to the district court of Salt Lake county. The cause was so transferred, and thereafter all further proceedings were had in the district court of Salt Lake county.

Thereafter in said court the demurrer of defendant George H. Blood was overruled, and his petition to be substituted as sole defendant was denied. He thereupon filed his answer, as receiver, and the only allegations thereof material to be considered, in view of the findings, are the pleas in bar. It is alleged that the action is barred by the provisions of Compiled Laws of Utah 1917, § 6468, subd. 1, section 6470, subd. 1, and section 18, c. 87, Session Laws of Utah 1925.

No answer or other pleading was filed by the defendant Guaranteed Securities Company.

Thereafter the defendant George H. Blood applied for leave to file an amendment to his answer to the effect that certain bonds had been issued and sold by the defendant Guaranteed Securities Company, which bonds were secured by the said mortgage, and that said bondholders had no notice of any defect in the title thereto, and that said mortgage was the only security therefor; that said receiver holds said mortgage for the benefit of said bondholders to secure the payment of said bonds. The application for leave to amend was denied.

There is no dispute as to the facts. The trial court found the transaction between plaintiffs and defendants was substantially as alleged in the complaint. It made no findings as to the fraudulent misrepresentations made by defendants to plaintiffs, as alleged in the complaint, and no findings were made as to other allegations of minor importance, apparently for the reason that the court regarded the same as immaterial and not essential to a decision of the case. It found, however, that the defendant Guaranteed Securities Company was an investment company during all the times mentioned and had no license or permission from the State Securities Commission to sell the stock in question. As conclusions therefrom it found the sale of the stock was void, and by decree directed that defendants return the note and mortgage to the plaintiffs, and that the clerk of the court surrender to plaintiffs the certificate of stock issued by defendants to the plaintiffs.

The trial court rested its decision entirely upon the fact that the transaction between plaintiffs and defendant Guaranteed Securities Company was void, and plaintiffs were entitled to recover the note and mortgage by virtue of chapter 17, § 24, Special Session Laws 1919, commonly known as the Blue Sky Law. Section 24 reads as follows:

"Any contract of sale made in violation of the terms of this chapter or without first applying for and receiving the license as herein required shall be unlawful and void and

every person, firm, domestic or foreign corporation participating directly or indirectly in the sale of any security in violation of the terms of this act and every officer, director, and agent of any corporation where acting as an investment company or dealer, or agent, shall be liable to the purchaser in a civil action instituted in any court of competent jurisdiction for the amount of the purchase price paid and all damages the purchaser may sustain, without proof of actual or constructive fraud."

The section quoted was in force at the time the plaintiffs purchased the stock, and gave as consideration therefor the note and mortgage in question.

The Blue Sky Law of 1919 was amended by legislative enactment in 1921 in certain particulars, but the section above quoted was not amended or in any manner referred to in the act. See chapter 131, Laws 1921.

In Session Laws 1925, c. 87, § 18, the section above quoted was amended to read as follows:

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action to tender under this section; provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale; and provided further, that no purchaser otherwise entitled shall claim or have the benefit of this section who shall have refused or failed within a reasonable time to accept the voluntary offer of the seller to take back the security in question and to refund the full

amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

"(a) In case such securities consist of interest bearing obligations at the same rate as provided in such obligations; and

"(b) In case such securities consist of other than interest bearing obligations at the rate of six per centum per annum; less, in every case, the amount of any income from said securities that may have been received by such purchaser."

The last section of the 1925 act reads as follows: ∎

"Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 20X, 21, 22, 23 and 24, Special Session Laws of Utah, 1919, as amended by Chapter 131, Laws of Utah, 1921, are hereby repealed, said repeal to take effect at the time this act becomes effective, provided, however, all actions or proceedings commenced and prosecuted under the provisions of Chapter 131, Laws of Utah, 1921, and pending at the time this act shall take effect, shall not be affected by said repeal."

It thus appears that section 24, c. 17, Laws of 1919, Special Session, was expressly repealed by the act of 1925, and is not in any sense included in the proviso. The proviso excepts only such cases as arise under chapter 131, Laws of 1921, and section 24 has no relation thereto. Furthermore, this action was not commenced nor was it being prosecuted when the 1925 law was enacted. It was not commenced until December 20, 1926. It is therefore unnecessary to consider the act of 1925 except to hold that it expressly repealed section 24, c. 17, Special Session Laws of 1919, under which plaintiffs' judgment must stand or fall on this appeal.

In this connection appellants contend that the repeal of section 24, supra, without a saving clause, "divested plaintiffs of any right of action which may otherwise have ac-

crued to them by virtue of the repealed section." In support of this contention the following cases are relied on: *Washburn* v. *Franklin,* 24 How. Prac. (N. Y.) 515; *Moss* v. *Smith,* 171 Cal. 777, 155 P. 90; *Iowa Savings & Loan Association* v. *Heidt,* 107 Iowa 297, 77 N. W. 1050, 43 L. R. A. 689, 70 Am. St. Rep. 197; *Wilson* v. *Head,* 184 Mass. 515, 69 N. E. 317; *Willcox* v. *Edwards,* 162 Cal. 455, 123 P. 276, Ann. Cas. 1913C, 1392.

The Washburn Case, supra, was decided upon the theory that a cause of action or defense given by a statute founded upon grounds of public policy confers no vested right which cannot be abrogated by a similar statute, and that the repeal of a law conferring such right of action or defense terminates the same.

That case supports appellants' contention. The Willcox Case, supra, is to the same effect. The other cases above cited are also more or less in point.

Respondents take the position that their right of action was not conferred by section 24, c. 17, Laws of 1919, but that they were merely pursuing a common-law remedy to recover their property. If respondents' position is tenable, they were justified in not challenging the rule announced in the case hereinbefore cited. Whether or not the repeal of a statute abrogates rights conferred by the statute repealed presents a serious question and one which the court is reluctant to decide unless it were necessary to a determination of the rights of the litigants. It is not necessary in the instant case, and the question is reserved.

Appellants rely on certain statutes of limitations pleaded in the answer. Section 24 hereinbefore quoted does not limit the time within which the action therein authorized may be commenced. In these circumstances appellants insist that Compiled Laws of Utah 1917, § 6468, subd. 1, pleaded in the answer, applies to the instant case. The statute reads:

"An action for liability created by the statute of a foreign state or by the statute of this state other than a penalty or

forfeiture under the laws of this state shall be begun within one year."

Appellants' contention is that plaintiffs' cause of action, as limited by the trial court and for which plaintiffs were awarded judgment, is based upon a liability created by statute. Plaintiffs in their complaint alleged facts that brought the case within the provisions of section 24 of the Blue Sky Law, and without such statute and such allegations in the complaint the judgment of the trial court would have had no basis on which to stand. But respondents say their "right of action or remedy was not given by the Blue Sky Law of 1919 but that they were merely pursuing a common law remedy to recover their property." Plaintiffs in their complaint alleged two grounds of liability against the defendants, and at the beginning of the trial their attorney stated the grounds of liability as follows: "Your Honor will observe that we rely upon these two grounds: (1) Fraud; and (2) the fact that the Securities Company did not have a Blue Sky license." No proof was offered in support of the first ground. The court held that the second ground was decisive, and entered findings and judgment accordingly.

It is indisputable that counsel for plaintiffs relied upon the provisions of the Blue Sky Law as grounds of liability, and it is equally beyond dispute that the court entered judgment in favor of the plaintiffs upon that ground and no other. Plaintiffs' common-law right of action was either abandoned by the plaintiffs or ignored by the trial court. So that it appears to the court that, whatever may be the effect, the conclusion is irresistible that the remedy pursued by plaintiffs and applied by the court was to enforce a liability created by statute. In order to obtain the judgment rendered, plaintiffs were only required to prove that the defendant company was an investment company operating without a license from the Securities Commission, and while so operating sold to the plaintiffs the certificate of stock in question. Each of the elements necessary to establish complete liability

was purely statutory, and neither of them cognizable either at common law or in equity.

In opposition to appellants' contention, counsel for respondents cites the case of *Jeremy Fuel & Grain Co.* v. *D. & R. G. Ry. Co.*, 60 Utah 153, 207 P. 155, in which the same statute of limitations was relied on to defeat the action. This court in that case held the plea to be untenable because the action was not for a liability created by statute but for the enforcement of a common-law right. The action in that case was for the recovery of excessive freight rates charged and collected by the defendant company, and the contention made by the defendant that the common law afforded no remedy in such cases was held by the court to be contrary to the great weight of American authority.

We are clearly of the opinion that the liability enforced by the judgment in this case was a liability created by statute and is barred by the one-year statute pleaded by the defendants. Plaintiffs' cause of action commenced to run November 7, 1924, when the transaction between plaintiffs and the defendant company was consummated. The action was commenced December 20, 1926, more than two years after. It follows from this conclusion that the cause must be remanded for a new trial. But, before making the order, there are other questions of minor importance to be determined. It is contended by appellants that the complaint does not state a cause of action against the receiver, because there is no allegation in the complaint that leave of court was obtained to sue the receiver. Such objection, in this case, to say the least, is of doubtful tenability. We are not disposed to consider it in the light of the numerous authorities cited in the briefs. In the first place, the record shows that, instead of the receiver seasonably objecting to being sued, he appeared in the cause which had been commenced in Weber county, and filed a petition in that court representing that he had been appointed receiver in another case by the district court of Salt Lake county, and prayed that he be substituted as the sole de-

fendant in this action. We next find him filing a demurrer
to the complaint in the Weber county court and also apply-
ing for a change of venue to the district court of Salt Lake
county, where he was appointed receiver and where the re-
ceivership estate was by him being administered. His appli-
cation for a change of venue was granted, and the cause
transferred. His petition to be substituted as sole defendant
was denied by the court in Salt Lake county, and his demur-
rer to the complaint was overruled. Besides all this, the
receiver was appointed by the court that tried the case and
entered the judgment appealed from. In these circumstances,
after judgment, leave of court to sue the receiver should be
implied. We are also of opinion that whatever right the
receiver had to claim immunity from being sued was waived
by his numerous appearances in the case, and especially by
his petitioning the court to be substituted as the sole de-
fendant.

One other question deserves a passing notice before con-
cluding. Appellants insist that the court erred in refusing
the defendant receiver's application for leave to·amend his
answer by alleging that bonds had been issued to
divers persons which bonds were secured by the mort- ▪
gage in question, and no other security, and were still
unpaid and outstanding. The court held that the proposed
amendment was no defense to the action, and denied the
application. We are of opinion the court did not err in
denying the application to amend. As to whether or not the
bondholders are entitled to relief in a proper action we ex-
press no opinion. The proposed amendment was no defense
to the present action.

From the allegations of the complaint, it appears that the
plaintiffs may have other grounds upon which the relief
sought for, or other relief, may be obtained.

It is therefore ordered that the cause be remanded, with
directions to the trial court to grant a new trial, with leave
to each of the parties to amend their respective pleadings;
costs to be taxed against the respondents.

CHERRY, HANSEN, and GIDEON, JJ., concur.

STRAUP, J. (dissenting).

This case involves the right to rescind a contract and recover back the consideration paid for capital stock of an investment company which in the sale of its capital stock had not complied with the Blue Sky Law.

In February, 1923, the plaintiffs loaned to Ferrin and his wife $2,000 on their promissory note due in three years, which was secured by their mortgage on real property alleged to be of the value of $3,500. The defendant Guaranteed Securities Company, on and prior to November, 1924, was an investment company engaged in selling and offering for sale its unissued capital stock and investment securities issued by it, and between February and the last of December, 1924, sold in Utah, without the consent or permission and without license from the State Securities Commission, to thirteen different persons, including the plaintiffs, 193 shares of its unissued capital stock of $250,000, divided into shares of the par value of $100 each. In November, 1924, the company, without license or a permit from the commission, sold to the plaintiffs in Utah 20 shares of its unissued capital stock at the par value of $100 each, in consideration of which the plaintiffs assigned and transferred to it the promissory note of the Ferrins. It is alleged that the plaintiffs were induced to purchase the stock through false representations of the company that it then was solvent, that it had earned and had accumulated a large profit or surplus sufficient to pay a dividend of 25 per cent and guaranteed to pay quarterly cash dividends after January 1, 1925, and because of other false and fraudulent representations. The plaintiffs sought to rescind the sale and contract of purchase on the ground of fraud and misrepresentations and of the illegality of the contract becase the company had no license or permit to sell its stock or other securities, and to recover back the note and mortgage assigned and transferred by them to the company.

A receiver was appointed for the company by the district court of Salt Lake county December 2, 1925. This action was commenced in the district court of Weber county on December 20, 1926. It was brought against both the Guaranteed Securities Company and the receiver, but without leave of court having first been had to bring it against the receiver or to make him a party. The receiver, however, voluntarily appeared in the action and filed a general demurrer to the complaint, which, having been overruled, he then filed an answer on behalf of himself and of the company. Upon his motion, a change of venue was granted from the district court of Weber county to the district court of Salt Lake county, where the case was tried to the court and judgment rendered and entered. The answer admitted the material allegations of the complaint, except the allegations of fraud and misrepresentations and the illegality of the contract, and admitted that the Guaranteed Securities Company was an investment company, and that it, between the dates stated and without a permit or license from the Securities Commission, had sold in Utah 20 shares of the par value of $100 each of its unissued capital stock to the plaintiffs and other shares to others. The receiver, however, denied that the contract or sale, for such or for any reason, was void, and affirmatively alleged that the action was barred by the provisions of subdivision 1 of section 6468, subdivision 1 of section 6470, Comp. Laws Utah 1917, and by section 18, c. 87, Laws Utah 1925. The receiver, before trial, proposed an amendment to his answer in effect averring that, after the assignment of the note and mortgage to the Guaranteed Securities Company, it issued and sold certain of its bonds which were secured by the mortgage to the extent of its face value, and that the persons to whom the bonds were sold were without knowledge of any defect, if any, in the title of the Guaranteed Securities Company to the mortgage, that none of the bonds had been paid, and that the holders of them had no other security, and that the receiver, as such, held the mortgage for their benefit and to secure the payment of

their bonds. On objections of the plaintiffs on the ground that the proposed amendment stated no defense to the complaint, the court denied the amendment.

On a trial before the court, it held with the plaintiffs that the sale of the stock was void, ordered the note and mortgage to be surrendered up and delivered back to the plaintiffs, and rendered judgment accordingly, from which the receiver alone appeals.

1. He contends the complaint, as to him, did not state a cause of action because it is not averred therein that leave was had to sue the receiver or to make him a party. The complaint contains no such allegation. What divergent views there may be on the subject, the later decisions are to the effect, and the weight of authority is, that failure to obtain leave is not jurisdictional nor fatal to the maintenance of the action. High, Receivers (4th Ed.) § 254A; *Pruyn* v. *Mc-Creary*, 105 App. Div. 302, 93 N. Y. S. 995, affirmed 182 N. Y. 568, 75 N. E. 1133; *Goodale Phonograph Co.* v. *Valentine*, 69 Wash. 263, 124 P. 691; *Curtis* v. *Mauger*, 186 Ind. 118, 114 N. E. 408; *Manker* v. *Phoenix Loan Ass'n*, 124 Iowa 341, 100 N. W. 38; *Fox River Paper Co.* v. *Western Envelope Co.*, 109 Ill. App. 393. It is no ground for demurrer. *Leuthold* v. *Young*, 32 Minn. 122, 19 N. W. 652.

The receiver, voluntarily appearing and pleading to the merits and moving for and obtaining a change of venue, waived whatever right he may have had to object to the plaintiffs' proceeding against him without leave of court. *Colorado Fuel & Iron Co.* v. *Rio Grande Southern R. Co.*, 8 Colo. App. 493, 46 P. 845; *Southwestern Surety Ins. Co.* v. *Pacific Coast Casualty Co.*, 92 Wash. 654, 159 P. 788; *Murray* v. *Etchepare*, 132 Cal. 286, 64 P. 282; *Flentham* v. *Steward*, 45 Neb. 640, 63 N. W. 924.

2. The receiver further urges that the court erred in denying his amendment to the answer. Counsel do not say much about this. They but say that though, as between the parties, the plaintiffs and the Guaranteed Securities

Company, the purchase and sale and the assignment and transfer of the note and mortgage were void, yet were valid as to the holders of bonds to secure which the Guaranteed Securities Company and the receiver held the note and mortgage. But the amendment does not aver nor tender any issue that the note or mortgage was in any sense negotiated to holders of the bonds, or that they in any sense became or were due course purchasers or holders of the note or mortgage within the meaning of the Negotiable Instruments Law. What is averred rather implies the contrary. Nor is it sufficiently or properly averred to show how or in what sense the receiver in his capacity as such acted for or represented the alleged bondholders. I think, therefore, no error was committed in denying the amendment.

3. The chief complaint relates to the rulings holding the sale of the stock and the assignment and transfer of the note and mortgage void and to overruling the pleaded bar of the statute of limitations. These may be considered together. With respect to such questions, it is not contended that the receiver does not stand in the shoes of the Guaranteed Securities Company or that whatever rights in such respect the plaintiffs may assert against the company may not also be asserted against the receiver. I shall therefore so regard the matter. Under the Blue Sky Law of the state, the Guaranteed Securities Company was such an investment company as to be under and within the provisions of that act, and to properly and legally sell its capital stock it was required to first obtain a license or permit from the State Securities Commission. Admittedly no such license or permit was obtained by it. Section 24, c. 17, Special Session Laws of 1919, in force in November, 1924, when the sale of the stock was made, was as follows:

"Any contract of sale made in violation of the terms of this chapter or without first applying for and receiving the license as herein required shall be unlawful and void and every person, firm, domestic or foreign corporation partici-

pating directly or indirectly in the sale of any security in violation of the terms of this act and every officer, director, and agent of any corporation where acting as an investment company or dealer, or agent, shall be liable to the purchaser in a civil action instituted in any court of competent jurisdiction for the amount of the purchase price paid and all damages the purchaser may sustain, without proof of actual or constructive fraud."

In 1925 the Legislature of Utah repealed the 1919 act and re-enacted a new Blue Sky Law (Laws Utah 1925, c. 87). In lieu of section 24 of the 1919 act, section 18 of the 1925 act was adopted. So far as material here, section 18 of the 1925 act reads as follows:

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action to tender under this section; provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale. * * *"

The 1925 act contained a proviso that "all actions or proceedings commenced and prosecuted under the provisions of Chapter 131, Laws of Utah, 1921, and pending at the time this act shall take effect [May, 1925] shall not be affected by said repeal."

This action was commenced in December, 1926, more than nineteen months after the act of 1919, and as amended in

1921 had been repealed, and two years, one month and thirteen days after the sale of the stock. The 1919 act as amended in 1921 fixed no period of limitation within which an action could be brought to recover back the amount of the purchase price paid or for damages sustained by the purchaser. Under the 1925 act such an action was required to be commenced within two years after the sale. The 1919 act as amended in 1921 rendered every contract of sale made in violation of the terms of the act, or without first applying for and receiving a license as in the act provided, *unlawful and void*. The 1925 act rendered it *voidable at the election of the purchaser*. It is the contention of the receiver that the action having been brought, not within two years after sale, is barred by the provisions of the 1925 act. He further contends that the action also is barred by subdivision 1 of section 6468, Comp. Laws Utah 1917, which provides that "an action for liability created by * * * the statute of this state other than a penalty or forfeiture under the laws of this state shall be begun within one year."

A liability created by statute is a liability which would not exist but for the statute. *Hawkins* v. *Iron Valley Furnace Co.*, 40 Ohio St. 507. That is the general rule. The plaintiffs' cause of action is not founded on nor dependent upon such a liability. Long before and independently of the act in question actionable liability and right of action existed to rescind contracts and sales on the ground that they were illegal or otherwise void and to recover back what was parted with, or to maintain an action at law to recover what was so paid or damages sustained by the purchaser. The 1919 act, as amended in 1921 and in force when the sale of stock was made in 1924, declaring that contracts of sale made in violation thereof and without a license or permit were unlawful and void, and rendering an investment company and its agents participating in the sale liable to the purchaser for the price paid and all damages sustained by him without proof of actual or constructive fraud, did not thereby create a new liability or a cause of action where

theretofore none existed. That a liability to account for or pay back what was received on an illegal or void contract or sale or transaction was actionable either in equity or at law is as old as jurisprudence itself and was so recognized at common law, in equity and by Codes. The basis of the rule was that no one was allowed to enrich himself through his own wrongful or illegal acts at the expense of another; that no right could be founded upon a violation of law; that contracts or transactions prohibited or forbidden by law to protect one class from another parties thereto were not regarded as in pari delicto, and thus what the wrongdoer so received was held by him for the use and benefit of the injured party and was recoverable from him, though based alone on the wrongful or illegal or invalid contract or transaction and without allegations or proof of actual fraud. The act of 1919, as amended in 1921, declaring a contract or sale of capital stock of an investment company without a permit or license to be unlawful and void, because it further provided that under such circumstances the investment company and its agents participating in the sale were liable to the purchaser for the amount of the purchase price paid and all damages sustained by him without proof of actual or constructive fraud, added nothing to such a liability, for, as is seen, without such further provision, a purchaser paying money or parting with a thing of value on an unlawful or void transaction or sale had the undoubted right either at law or in equity to recover back what was so paid and all damages sustained by him. Thus had the act but declared the contract or sale unlawful and there stopped without the further provision, it could not successfully be contended that a purchaser had not the right, based alone on such invalidity of the contract or sale, either at law or in equity, to recover back what he had parted with. In such case a cause of action accrued and vested in him when the unlawful and void sale was made and the purchase price paid by him. Hence, after the act declared the contract or sale unlawful and void, what it further provided, whether regarded as of right or

merely of remedy, was but declaratory of what theretofore was recognized at common law, in equity, and by Codes. And, as is well asserted by the plaintiffs, the action was not, nor was it required to be, brought under that act, and that it was merely invoked to show the illegality of the acts by which the note and mortgage sought to be recovered were obtained. Such views, as I think, are supported not only by ample but by the great weight of authority. *Jeremy Fuel & Grain Co.* v. *D. & R. G. R. Co.*, 60 Utah 153, 207 P. 155; *National Underwriting Co.* v. *Simon* (C. C. A.) 9 F. (2d) 920; *Karamanou* v. *Greene Co.*, 80 N. H. 420, 124 A. 373; *Edward* v. *Ioor*, 205 Mich. 617, 172 N. W. 620, 15 A. L. R. 256; *Webster* v. *U. S. I. Realty Co.*, 170 Minn. 360, 212 N. W. 806; *Vercillini* v. *U. S. I. Realty Co.*, 158 Minn. 72, 196 N. W. 672; *Baum* v. *Thoms*, 150 Ind. 378, 50 N. E. 357, 65 Am. St. Rep. 368; *Stewart* v. *Brady*, 300 Ill. 425, 133 N. E. 310; *Weitz* v. *Quigley*, 88 N. J. Law 617, 97 A. 254; *Parker* v. *Otis*, 130 Cal. 322, 62 P. 571, 927, 92 Am. St. Rep. 56. I therefore am of the opinion that the pleaded one-year statute did not apply.

The receiver, however, chiefly urges the bar by reason of the 1925 act. He says that act repealing the 1919 act as amended in 1921 took away all defenses or assaults of illegality of the sale the same as though such statute had not existed, and that hence the plaintiffs, to avail themselves of any assault on or complaint of the sale of the stock on the ground of illegality, were required to bring themselves within the 1925 act, which they did not do. On the assumption that it was the 1919 act as amended by the act of 1921 which alone gave the plaintiffs a cause or right of action, and without which they had none, and that such demand or right was lost by the repeal of that act by the 1925 act, the cited cases of *Willcox* v. *Edwards*, 162 Cal. 455, 123 P. 276, Ann. Cas. 1913C, 1392, and *Washburn* v. *Franklin*, 24 How. Prac. (N. Y.) 515, to some extent support the receiver's contention. If, however, the assumption is groundless, the cases are inapplicable; and, even on the assumption, they do not in my

judgment declare the weight of authority. Under the act in force when the sale was made, the act of 1919, as amended in 1921, the transaction and sale were unlawful and void; under the 1925 act subsequently passed transactions and sales of such character were made only voidable. But it is the act in force when the sale was made and the transaction had which applies. The sale under that act being unlawful and void was not by subsequent changes of the act rendered lawful or valid, nor was its void and unlawful character or status changed to one merely voidable. Plaintiffs' cause of action accrued and vested in them when the stock was sold and the purchase price paid. That being so, the plaintiffs acquired a vested right in and to a demand or cause of action for the moneys paid or other valuable thing parted with, which could not be affected by subsequent changes or a repeal of the act. In other words, such right or state of things which had grown out of the act when in force and which had ripened into a demand, and a cause of action could not be canceled nor annihilated by a subsequent repeal of the act. I think that familiar doctrine, and is, as I think, supported by the great weight of authority. *Morrison* v. *Farmers' Elevator Co.,* 319 Ill. 372, 150 N. E. 330; *Coe* v. *Portland Farmers' Elevator Co.,* 236 Mich. 34, 209 N. W. 829; *Whitaker* v. *Pope,* 29 Fed. Cas. 961, No. 17528; *Peters* v. *Goulden,* 27 Mich. 171; *Ettor* v. *Tacoma,* 228 U. S. 148, 33 S. Ct. 428, 57 L. Ed. 773; *Jacobs* v. *Seattle,* 100 Wash. 524, 171 P. 662, L. R. A. 1918E, 131; *State* v. *Williams,* 10 Tex. Civ. App. 346, 30 S. W. 477.

The plaintiffs' cause of action thus did not arise out of, nor was it affected by, or dependent upon, the 1925 act, and hence the pleaded bar of that act likewise was ineffectual. I therefore am of the opinion that the cause of action was not barred by either of the pleaded statutes, and that it is controlled by the general statute of four years' limitation. It is not claimed that the action is barred by that statute. I thus think the judgment of the court below should be **affirmed.**