WILSON et al. v. GUARANTEED SECURITIES CO. et al.

No. 5087. Decided July 11, 1933. (23 P. [2d] 921)

*Leslie Frazer,* of Salt Lake County, for appellants.

*C. R. Hollingsworth* and *J. E. Evans,* both of Ogden, for respondents.

ELIAS HANSEN, Justice.

Plaintiffs brought this suit to rescind an executed contract whereby plaintiffs transferred to the defendant company a note together with a real estate mortgage given to secure the payment of the note, and the defendant company transferred to the plaintiffs twenty shares of its capital stock. The note and mortgage involved in the transaction were for the principal sum of $2,000. The par value of the stock was $100 per share. This is the second time the cause has been before this court. On the former appeal the only question before us was whether or not the Wilsons had a right to rescind the contract because the defendant company had not complied with the Blue Sky Law at the time the transaction was had. It was held on the former appeal that the plaintiffs must fail upon that ground because the suit was not begun within one year after the date of the sale. *Wilson et al.* v. *Guaranteed Securities Co.,* 73 Utah 157, 272 P. 946. The question presented on this appeal is whether or not the plaintiffs, upon the record brought here for review, have the right to rescind the contract because of alleged fraudulent representations made by defendant company to plaintiffs prior to and at the time the contract was entered into.

Plaintiffs allege in their complaint that the defendant company "made and caused to be made to the plaintiffs the

following false and fraudulent representations concerning said Guaranteed Securities Company, to wit: That it was solvent; that it had conducted its business in a wise, safe and prudent manner; that its capital stock was unimpaired; that its capital stock was then worth more than $100.00 per share; that it had actually earned and had accumulated a large profit or surplus; that it had actually earned and had on hand a sufficient sum so that it would on January 1, 1925, make and pay to its then stockholders a stock dividend of twenty-five (25) per cent; that it had actually earned and had on hand a sufficient profit or surplus so that it would pay, after January 1, 1925, regular quarterly cash dividends to all its stockholders; that said Guaranteed Securities Company would guarantee to pay said stock dividend on January 1, 1925, and would guarantee to pay said regular quarterly cash dividends after January 1, 1925." Plaintiffs further alleged that the representations so made to them were false; that they were made for the purpose of deceiving plaintiffs and to induce them to purchase the stock; that plaintiffs believed the representations and in reliance thereon indorsed the note and assigned the mortgage and delivered them to the defendant to their damage in the sum of $3,500. Defendants, in their answer, denied generally the alleged fraud.

Upon the issues thus joined a trial was had before the court sitting without a jury. The trial court found all the issues in favor of the plaintiffs. The findings made by the court with respect to fraud are substantially the same as the allegations of the complaint. A decree was accordingly made and entered directing that the note and mortgage be returned to the plaintiffs and that the certificate for the twenty shares of stock be returned to the defendant company. This appeal is prosecuted by the defendants. By their assignments of error defendants attack substantially all of the findings of fact which were in issue. They also assign error in the admission of certain evidence. In their brief, defendants confine their argument to those assignments which relate to the court's finding with respect to the financial condition

of the defendant company at the time of the transaction involved in this controversy. It is also urged on behalf of defendants that some of the alleged misrepresentations do not constitute actionable fraud. The position taken by defendants with respect to some of the alleged representations is well grounded, but a representation that the defendant company had actually earned and had on hand a sufficient sum so that it would on January 1, 1925, make and pay to its stockholders a stock dividend of 25 per cent and would thereafter pay regular quarterly cash dividends to all of its stockholders was a representation of a material fact. If that representation were false and if the other elements of fraud were present in the transaction in question, the judgment appealed from is right. The allegations of the complaint in the case of *Campbell* v. *Zion's Co-op. Home Bldg. & Real Estate Co.*, 46 Utah 1, 148 P. 401, are quite similar to the allegations in the complaint here. In that case the question of what misrepresentations do and what do not constitute actionable fraud is discussed at some length. It is therefore unnecessary for us in this opinion to repeat what is there said on that subject.

Defendants seem to concede that there is evidence which tends to support the finding that the vice president of the defendant company made the representations alleged in the complaint. We shall not review the evidence touching that phase of the case. Suffice it to say that the findings with respect to the representations alleged to have been made by the defendant company find support in the evidence.

It is earnestly urged on behalf of the defendants that there is no competent evidence which shows or tends to show that the representations alleged to have been made by defendant company with respect to its financial conditions at the time of the transaction involved in this litigation were false and that, therefore, the judgment appealed from cannot stand. That the burden was on the plaintiffs to establish by competent evidence and a preponderance thereof the falsity of the representations alleged to have been

made by the defendant company is elementary. Following is a summary of the evidence touching the financial condition of the defendant company: The transaction which constitutes the subject-matter of this litigation was consummated on November 7, 1924. On December 2, 1925, the defendant George H. Blood was appointed receiver of the defendant company. Russell S. Callister testified that he was the secretary of the securities commission of the State of Utah; that two reports of audits, one marked Exhibit G and the other H, were produced from the files and records of the state securities commission of Utah. Mark Tuttle testified that from 1920 to 1925 he was the state auditor of the state of Utah; that during a period of ten years prior to serving as state auditor he was the chief deputy clerk in the office of the state auditor of Utah; that before working in the office of the state auditor he had similar experience as county auditor of Emery county, Utah, and for private corporations; that his experience in auditing accounts and bookkeeping covered a period of about twenty-one years; that during the year 1925 he made an examination of the books and records of the defendant company and filed a report of the same with the Utah securities commission, upon whose request he made the examination; that in the course of his audit he examined the ledgers, the cash book, the journal entries, the minutes, and everything pertaining to the affairs of the company from the time it was incorporated up to the time he made his report; that the audit was made with the thought in mind of ascertaining fully the financial condition of the company; that Exhibit H is the report which he made; that during the course of his audit and examination of defendant's books and records he had access and frequently referred to a report made by a Mr. Price, which report was marked Exhibit G; that he checked Mr. Price's report with the ledger and various supporting records of defendant company and found the report correct. Exhibit G, the report of the audit made by Mr. Price, was received in evidence over the timely objection and exception of the de-

fendants. A part of the report of the audit made by Mr. Tuttle, Exhibit H, which is characterized as an analysis of the report, was also admitted in evidence over the objection of defendants. The admission of Exhibit G and that part of Exhibit H which was admitted is assigned as error. Exhibit G purports to be an audit made by Mr. Price as of September 30, 1924. At the time of making the report, Mr. Price was in the employ of the state banking department. That part of Exhibit H which was received in evidence shows that Mr. Tuttle in his report eliminated various sums from what the books of the defendant company showed as assets. The books of the company showed assets consisting of loans secured by stocks and bonds and real estate mortgages, cash investments in stocks, and bonds of other companies, land sale contracts, furniture and fixtures, etc., a total of $481,423.44. From that amount, Mr. Tuttle eliminated or deducted $223,-586.57, leaving as resources in defendant company according to the report the sum of $257,836.87. Mr. Tuttle testified that the defendant company set up as an asset under the heading "Undistributed Profits" what it would have realized from the sale of bond contracts in the event the purchaser of the bonds paid in full the amount of the contract; that the company should have waited until the cash was paid in on a contract for the sale of bonds before claiming the profits that might be realized from the sale of the bonds. He further testified over timely objection and exception of defendants that in his opinion the items which he eliminated were not assets of the defendant company in either 1924 or 1925 and that from July 1, 1924, to November 7, 1924, the defendant company was, in his opinion, insolvent. Error is assigned because of the ruling permitting Mr. Tuttle to express his opinion that the items eliminated by him were not assets of the defendant company and also in permitting him to express the opinion that the defendant company was insolvent from July 1, 1924, to November 7th of that year. On cross-examination Mr. Tuttle was asked if the defendant company would have been solvent from July 1 to November

7, 1924, if the items which he eliminated from his report were in fact assets of the defendant company. To that question he replied that in such case the defendant company would have been solvent.

The foregoing is a summary of all the testimony received at the trial touching the financial condition of the defendant company. It is urged on behalf of defendants that the court below was in error in admitting in evidence the reports of the audits made by Mr. Price and Mr. Tuttle and was also in error in permitting Mr. Tuttle to express the opinion that the defendant company was insolvent from July 1 to November 7, 1924. Plaintiff's' attorneys attempt to defend the ruling in admitting the auditors' reports in evidence upon the claim that they are public documents. In defense of the ruling permitting Mr. Tuttle to express an opinion as to the financial condition of the defendant company, plaintiffs urge that, Mr. Tuttle being an expert accountant and having audited the books and records of the defendant company, his opinion as to the financial condition was properly received in evidence. The powers and duties of the state securities commission are fixed by Laws of Utah 1919, Spec. Session, chap 17. Section 13 of that act grants to the commission power to examine the books of every licensed dealer engaged in the business of selling stocks, bonds, investment contracts, and other securities within this state. Section 18 of the same act requires investment companies to make and file with the commission annual reports showing in detail their financial condition. The defendant company was not a licensed dealer and even if it were there is nothing in the act creating the securities commission which requires the commission to examine the books of licensed dealers and make and keep on file a report of such examination. Neither the report or the audit made by Mr. Price nor that made by Mr. Tuttle was admissible in evidence upon the theory that they were public records. *Continental Nat'l Bank* v. *Naylor*, 54 Utah 49, 179 P. 67; *City of Stockton* v. *Vote*, 76 Cal. App. 369, 224 P. 609. Neither

Mr. Price nor Mr. Tuttle acted for the defendant company in making the audit of its books and records and, therefore, the statements made in the reports were in no sense statements made by the company. If, therefore, the admission in evidence of the testimony of Mr. Tuttle and of his audit with respect to what was shown by the books of the defendant company is to be sustained, it must be upon the theory that the books and records themselves were so numerous or voluminous that they could not be conveniently examined. It has frequently been held that the general results of an examination may be testified to by any person who has examined the documents and who is skilled in such matters, provided the result is capable of being ascertained by calculation. In such case, according to one line of authorities, "when it appears that the witness has examined the accounts he is permitted to give oral testimony as to balances, solvency and insolvency as shown by the books, and the results of his examination. In other cases, however, such evidence has been rejected." Jones' Commentaries on Evid. (2d Ed.) Vol. 2 § 787, p. 1453, and cases there cited.

Assuming, without deciding, that it was proper to permit Mr. Tuttle to testify as to what the books of the company showed as to its solvency or insolvency, it by no means follows, under the authorities which permit the reception of such testimony, that it was competent for him to express an opinion as to the financial condition of the company independent of what was shown by the books.

In the course of his examination, Mr. Tuttle qualified as an expert accountant, but so far as appears he knew nothing about the assets of the defendant company except as shown by its books. In order to save the time of the court an expert accountant may properly be of aid in making computations, striking totals and balances, but the mere fact that he is an accountant does not qualify him to testify as to the value of the assets which were carried on the books and records which he examined. Moreover, the

record before us is completely silent as to why Mr. Tuttle eliminated or deducted various sums from the assets of the defendant company as shown by its books and records. Reference to a few items will serve as illustrations. The books of the defendant company, according to Mr. Tuttle's testimony, showed as resources as of December 1, 1925, loans secured by stocks and bonds, $49,576.80, from which amount he deducted $44,576.80, leaving as actual assets $5,000; loans secured by real estate mortgages, $232,515, from which he deducted $32,515, leaving as actual assets in that item $200,-000; furniture and fixtures, $5,316.30, from which was deducted $1,316.30, leaving actual assets in that item $4,000; investments, stocks of other companies, $19,236.26, the whole of which was eliminated; accruing profits, bonds purchased, $37,021.74, the whole of which was eliminated. Mr. Tuttle was further permitted to testify over defendants' objection that various of the items which were carried as resources in 1925 were also carried as resources in 1924, but in some instances for a less amount. No facts were testified to as the basis upon which Mr. Tuttle made the various deductions and eliminations except with respect to the item "accruing profits, bonds purchased." As to that item he testified that it was carried on the books of the company as an asset as soon as the bonds were sold and should not have been so carried until the money was actually received. It would seem that if the purchaser of bonds were financially responsible for the whole amount that such purchaser agreed to pay would be an asset of the company without regard to the heading under which it was carried on the books of the company. Whether the $44,576.80 was deducted from the $49,-576.80 of loans secured by stocks and bonds because, in the opinion of the witness, the security was inadequate or because defendant did not have loans of any amount or for some other reason is not made to appear. So likewise is the record silent as to the basis upon which the witness Tuttle made the other deductions. If the items from which deductions were made or which were entirely eliminated did not

exist in whole or in part, it did not require the opinion of an expert to eliminate them. If the actual value of the property which was reported as an asset of the defendant company was in dispute, the witness Tuttle was not shown to be qualified to testify as to its value. If the facts upon which Mr. Tuttle based his conclusions had been before the court, the deductions and eliminations made by him may or may not have been justified. Certain it is that it was the duty of the court and not the witness to determine what was the financial condition of the defendant company. From what has been said it follows that the witness Tuttle was not shown to be qualified to express an opinion as to whether the defendant company was or was not solvent at the time in question. And in no event was it proper for him to express an opinion as to such matter until the facts upon which his opinion was founded were before the court so that the court might determine whether the alleged facts upon which the conclusion was based were real, and also whether the facts, if found to be true, justified the conclusion or opinion expressed. Jones' Commentaries on Evid. (2d Ed.) Vol. 3, § 1334, p. 2440. The court below was in error in permitting Mr. Tuttle to express an opinion as to whether or not the defendant company was or was not insolvent at the time in question. No claim is made and could not well be made that the mere fact that a receiver was appointed of the defendant company in December, 1925, justifies the conclusion that the company was involvent from July to November of 1924. Thus, there is no competent evidence to support the finding that the representations made with respect to the financial condition of the company were in fact false when made.

It follows that the judgment must be reversed. Such is the order. This cause is remanded to the district court of Salt Lake county with directions to grant a new trial. Appellants are awarded their costs.

STRAUP, C. J., and EPHRAIM HANSON, FOLLAND, and MOFFATT, JJ., concur.